UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RENEE ANDERSON,

    Plaintiff,

v.                                       Case No. 8:08-cv-772-T-24 TBM

HILLSBOROUGH COUNTY
SCHOOL BOARD,

    Defendant.

_____/

## **O R D E R**

The Court now considers cross motions for summary judgment filed by the Defendant, the Hillsborough County School Board (Doc. 37), and by the Plaintiff, Renee Anderson (Doc. 38). Both motions were opposed. (Docs. 45, 46.)

Anderson, a 20-year-old high school graduate, brings this lawsuit under 42 U.S.C. § 1983 against the Hillsborough County School Board for allegedly violating her due process rights under the Fourteenth Amendment to the United States Constitution when it removed her from school for hitting an assistant principal. (Compl. ¶¶ 1, 4.) Because Anderson's allegations, even if true, do not form a claim under 42 U.S.C. § 1983, the Court enters summary judgment for the Hillsborough County School Board.

## **FACTS**

On May 13, 2005, Assistant Principal Kevin Massena responded to a call on his school radio about a fight in the parking lot at Riverview High School. (Massena Statement, Doc. 34-2

1

at 4; Slider Statement, Doc. 34-2 at 8.) When Massena arrived on the scene, he was told that sophomore Renee Anderson, who had left, was involved in a fight. (Massena Statement, Doc. 34-2 at 4.) Massena found Anderson on campus and told her to come to his office.[1] She refused—until Massena told her that a law enforcement officer would intervene if she did not come on her own. Id. At the office, Anderson began screaming at Massena. (Ross Statement, Doc. 34-2 at 7.) When Massena left her alone for a moment, she called her mother from her cell phone. "They are trying to hold me here," Anderson said. Id. Her mother told her to leave the office. (Anderson Dep. at 25.) As Anderson got up to leave, Massena stood in the office doorway to prevent her from going. (Massena Statement, Doc. 34-2.) Anderson pushed the assistant principal out of the way and left.[2] Id.

Anderson's mother, who lived across the street from Riverview High School, walked over to the school and met Anderson at the band practice field. (Heilmann Statement, Doc. 34-2 at 5.) The principal and two assistant principals were there attempting to control Anderson, whom they described as out-of-control. Id. Meanwhile, two Hillsborough County sheriff's deputies, who had been called about a battery on a school employee, arrived on scene, and arrested Anderson. (Heilmann Statement, Doc. 34-2 at 5.) She was taken to the Juvenile

---

[1] The parties dispute many of the details about the incident. For example, Anderson testified that a different assistant principal found her in the hallway. (Anderson Dep. at 20-21.)

[2] Anderson denies touching Massena as she left. However, in an affidavit, she stated: "I exited to the Vice-Principal Massena's right side and do not recall striking or coming into contact with him. If I came into any contract with [Massena] it was unintentional and minor." (Pl. Aff. ¶¶ 4-5, Doc. 35-2.) Prosecutors charged Anderson with misdemeanor battery in a delinquency petition filed in the juvenile division of the 13th Judicial Circuit of Florida, and Circuit Judge Herbert Baumann Jr. adjudicated her delinquent of misdemeanor battery. (Docs. 37-6, 37-7.)

2

Assessment Center and later charged with misdemeanor battery. (Doc. 37-6.)

Even though it was the last week of school before summer break,[3] Riverview Principal Robert Heilmann suspended Anderson for 10 days for fighting and for battery on a school employee. (Massena Letter, Doc. 31-2 at 2.) The next week, Heilmann met with Anderson's mother, Paulette Walton, twice to discuss her daughter's suspension. After the meetings, Heilmann recommended that Anderson be expelled or moved to another school.[4]

On May 25, 2005, School Superintendent Earl J. Lennard wrote Anderson's parents, Paulette and Vincent Walton,[5] to inform them of a administrative hearing set for June 2, 2005 in Anderson's case. (Lennard Letter, Doc. 31-2 at 3.) Two hearing officers would preside over the June 2 administrative hearing to determine whether the School Board needed to adjudicate any factual disputes in the case. If Anderson denied that she violated the school's conduct code, then the School Board would hold a full evidentiary hearing to determine what happened. If Anderson admitted the violations, then the hearing officers would decide whether to expel Anderson or move her to another school. In the vast majority of disciplinary cases such as Anderson's, the hearing officers do not expel the student. Instead, the hearing officers recommend a change of placement. (Clark Dep. at 16.)

On June 2, 2005, the Waltons appeared at the administrative hearing and asked for access

---

[3] Anderson Dep. at 42, line 11.

[4] The School District apparently did not pursue the fighting charge against Anderson and only accused her of battery on a school employee. (Lennard Letter, Doc. 31-2 at 3.) The School Board refers to the process to move a student to another school as a "Change of Placement."

[5] Paulette Walton is Anderson's biological mother, and Vincent Walton is her step-father. (Vincent Walton Dep. at 6-7.) The delinquency petition filed against Anderson listed only Paulette Walton as a parent or legal guardian of her daughter. (Doc. 37-6.)

to school records that they saw the hearing officers using. The School Board's attorney would not give the Waltons the records because of the School Board's policy of withholding disciplinary records until after the administrative hearing. (Clark Dep. at 39-40.) Because the School Board did not tape record the June 2 hearing, it is not clear precisely what happened after the School Board declined to give the Waltons the records. (Clark Dep. at 21.) The hearing officers, however, refused to continue the hearing and asked the Waltons to leave.[6] They said they could not conduct an orderly hearing.

The next week on June 7, 2005, the School Board approved without discussion a recommendation to expel Anderson until an orderly hearing could be held. (Doc. 37-5.) The recommendation reported that Anderson's parents had told the hearing officers that their daughter's constitutional rights were being violated. It also reported that the hearing officers could not conduct an orderly administrative hearing and they told Anderson's parents to reschedule the hearing. It stated: "Expelled until an administrative hearing is held." Id. The recommendation was listed in small typeface in a chart attached to the School Board agenda. The recommendation also stated that Anderson had admitted at the hearing to hitting Assistant Principal Massena—something Anderson denies that she admitted at the hearing. The next day, June 8, 2005, Assistant Superintendent Kenneth Otero wrote to the Waltons and instructed them to reschedule the hearing. The letter said: "[Y]our daughter, Renee Anderson, has been expelled

---

[6] Mrs. Walton said the hearing officers were "forcing things down" on Anderson and "chased us out" of the hearing. (Paulette Walton Dep. at 46, 63.) She said the hearing officers told her: "You know what? You see that door? Leave." She said, "We got up politely" and left. Id. Clark, the hearing officer, testified that he did not recall what occurred, but said that the hearing officers have stopped hearings because of disruptive parents on rare occasions. (Clark Dep. at 12, 16, 20-21.)

4

from Riverview High School and all other regular Hillsborough County Public Schools until such time as an administrative hearing can be completed."[7] (Doc. 31-2.)

The Waltons interpreted the letter to mean that Anderson had been permanently expelled. Mr. Walton testified the letter "didn't say it was [an] extension of suspension. It said expulsion. Expulsion is conclusion." Both Mr. and Mrs. Walton, however, acknowledged that the letter also stated that Anderson was expelled "until such time as an administrative hearing can be completed."

Because the Waltons said they believed that their daughter had been permanently expelled, they decided to move across the state to Port St. Lucie to enroll Anderson in another school. (Paulette Walton Dep. at 47-48.) They did not reschedule the June 3 hearing,[8] and they did not immediately contest the statement that Anderson had admitted to battery on the assistant principal. Instead, in late June, Mrs. Walton tried to enroll her daughter in high school in Port St. Lucie. (Paulette Walton Dep. at 47-48.) However, because of Anderson's removal from Riverview High School, the St. Lucie County School Board would not enroll her in a high school. School officials in St. Lucie told Mrs. Walton that Anderson could enroll in an alternative school. Id. at 56.

In July, the Waltons hired an attorney, who wrote the Hillsborough County School Board on July 28 to seek records and to deny that Anderson had admitted the violation at the June 3

---

[7] The same week, the State Attorney in Hillsborough County filed a petition of delinquency in Circuit Court in the 13th Judicial Circuit charging Anderson with misdemeanor battery. (Doc. 37-6.)

[8] Mr. Walton said he considered the offer to reschedule the hearing "an attempt to confuse" based on race. (Vince Walton Dep. at 64.)

hearing. (Doc. 32-2 at 5.) After getting the letter, the School Board, on its own, scheduled a new administrative hearing for August 11, 2005. (Doc. 31-2 at 2.) The School Board mailed and then hand-delivered letters to the Waltons informing them of the hearing. Neither letter used the word "expulsion." (Elia Letter, Doc. 32-3 at 7; Otero Memo, Doc. 31-2 at 14.) The hand-delivered letter said that Anderson's "suspension is extended" until the August 11 hearing.

Although Mr. Walton said he believed that the School Board had already permanently expelled his step-daughter, he decided to attend the August 11 administrative hearing anyway. (Tr. at 3.) At the hearing, Anderson again denied that she pushed the assistant principal. Anderson's attorney again asked for records in the case—the hearing officers again declined to provide them.[9] (Tr. at 6, 13-15.) Anderson's attorney asked the hearing officers to re-admit her to school, arguing that Anderson had not hurt the assistant principal in the scuffle. (Doc. 34-4, Tr. at 30.) But the officers, concerned about school discipline, declined to do so. (Tr. at 28-30; Doc. 34-3.) According to one of the hearing officers, if Anderson had admitted pushing Massena, the officers would have recommended placing her in an alternative school for the year. If she successfully completed the year in the alternative school, she would have been able to re-enroll in a regular high school. (Doc. 34-3; see also Clark Dep. at 20.)

After the administrative hearing, school area director Sherrie Sikes tried to contact the Waltons about the upcoming evidentiary hearing before the School Board. However, the letters to the Waltons' Riverview address were returned with no forwarding address. (Doc. 32-2 at 1-2.) Sikes sent a school security officer to the Waltons' Riverview house, but no one was home.

---

[9] One of the hearing officers agreed that the District should have provided the Waltons with many, if not most, of the records they sought. However, the District apparently did not provide the records. (Tr. at 6-15.)

(Sikes Dep. at 16-23.)  Sikes also said she called Anderson's attorney every day for about two weeks—but did not get a return call.  (Sikes Dep. at 20.)

By the start of the 2005-2006 school year, Mrs. Walton had decided to enroll her daughter in an alternative school in Port St. Lucie.  Her daughter had already missed two weeks of school, and Mrs. Walton did not want her to miss more school.  (Paulette Walton Dep. at 56-58.)  Anderson completed the year in the alternative school and ultimately graduated from Ft. Pierce High School.[10]  (Docs. 37-8, 37-9.)

On April 21, 2008, Anderson sued the Hillsborough County School Board in federal court.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Id.  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and

---

[10] Anderson's time in St. Lucie County was not without trouble.  She was disciplined six times for disruptive conduct or open defiance.  (Doc. 37-9 at 2.)  According to her step-father, Anderson was also arrested for pushing another student, but the charges were dropped.  (Vincent Walton Dep. at 61.)

admissions on file, designate specific facts showing there is a genuine issue of material fact for trial. Id. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Id. at 252.

## **ANALYSIS**

The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property without due process of law. In order to give the promise of the Fourteenth Amendment meaning, Congress in 1871 passed 42 U.S.C. § 1983.[11] The federal law authorizes individuals to sue states or officials who act under color of state law for violating certain federal laws and federal constitutional rights.

In order to prove a claim under § 1983, a person must show that state action caused that person to be deprived of her constitutional rights. When suing a local government such as the

---

[11] Schwartz & Urbonya, Section 1983 Litigation 1 (2d ed. 2008).

Hillsborough County School Board,[12] a plaintiff must also show that an official government policy, government custom or practice, or the act of an official with final policy-making authority caused the constitutional violation. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Denno v. Sch. Bd. of Volusia County, 219 F.3d 1267, 1276 (11th Cir. 2000).

In her lawsuit, Anderson alleges that the School Board deprived her of her constitutional right to a public school education. While the United States Constitution does not specifically grant an individual the right to a public school education, it does protect a person's property rights. Because Florida gives students a statutory and state constitutional right to a public school education,[13] courts treat the right to an education as a property interest protected by the Fourteenth Amendment. Goss v. Lopez, 419 U.S. 565, 574 (1975). Therefore, a state may not arbitrarily deprive a student of their education without a minimum amount of due process that includes notice and an opportunity to be heard, appropriate to the nature of the case. Id. at 579.

Anderson alleges due process violations in three steps of the removal process. First, Anderson alleges various procedural defects in the June 7, 2005 School Board meeting, in which Anderson asserts she was expelled from all Hillsborough County public schools and all schools in Florida. (Compl. ¶¶ 29, 30, 39.) Second, she alleges a due process violation by the School's Board's failure to submit "a recommended order consisting of findings of fact, conclusions of law, and recommended disposition or penalty" after the June 7, 2005 School Board meeting.

---

[12] "School boards constitute branches of local government and thus may be subject to liability under" § 1983. Denno v. Sch. Bd. of Volusia County, 219 F.3d 1267, 1276 n.9 (11th Cir. 2000) (citing Arnold v. Bd. of Escambia County, 880 F.2d 305, 310 (11th Cir. 1989)).

[13] See Fla. Const. Art. IX § 1 ("The education of children is a fundamental value of the people of the State of Florida. It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing within its borders.").

(Compl. ¶ 35.) Third, she alleges a due process violation for failure to produce records at the June 2, 2005, administrative hearing. (Compl. ¶ 38.)

### A. The School Board Did Not Expel Anderson

In order to prove a violation of § 1983, Anderson must first show that the state deprived her of life, liberty, or property. To the extent that Anderson argues that the School Board deprived her of a property right to a public school education by expelling her, Anderson's argument fails for a simple reason. Anderson was never officially and permanently expelled from Hillsborough County public schools. Moreover, she was given notice and opportunity to be heard at the administrative hearing held after her temporary expulsion. Because the School Board did not actually expel Anderson, the School Board did not violate her procedural due process rights.

Anderson asserts that the School Board expelled her at the June 7, 2005 School Board meeting without notice or an opportunity to be heard because it approved, without discussion, a recommendation in a chart attached to the School Board's publicly-available agenda. The chart recounted that the hearing officers had stopped Anderson's June 2 administrative hearing to keep order. It also stated that Anderson was expelled until a hearing could be rescheduled.

Anderson relies on the fact that the School Board used the word "expelled," rather than "suspension," to describe Anderson's status. It is true that expulsion ordinarily refers to a permanent removal from a position, while suspension is temporary.[14] The School Board used the

---

[14] Webster's II New Riverside University Dictionary defines expel as "to dismiss, as from a school or society." The dictionary defines suspension as a "temporary abrogation or deferment; debarment, as from office or privilege." See also Black's Law Dictionary 603 (7th ed. 1999) (Expulsion—"An ejectment or banishment, either through depriving a person of a benefit or by forcibly evicting a person.") See id. at 1460. (Suspension—"The temporary deprivation of a

word "expelled" because a suspension, under the School Board's rules, may not last for more than 10 days.¹⁵ But even though the word "expulsion," standing alone, might lead to confusion, the School Board's statements, when read in their entirety, are unambiguous.¹⁶ The School Board clearly stated that Anderson was only expelled **until** a hearing could be held. The School Board also instructed Anderson's parents to reschedule the administrative hearing that had been disrupted. Therefore, Anderson was not officially and permanently expelled.

Although Anderson argues that the School Board expelled her, her parents' actions suggest that they realized that she was only temporarily removed from school pending a hearing. Anderson argues that the School Board expelled her on June 7, yet her parents attended the re-scheduled administrative hearing on August 11. When Mrs. Walton sought to enroll Anderson in school in St. Lucie County, officials there explained that Anderson could not have been expelled without a final hearing. Mrs. Walton knew that no final hearing had occurred, and she said she believed the official's explanation.¹⁷ On the other hand, Anderson argues that her

---

person's powers or privileges, esp. of office or profession. The temporary withdrawal from employment, as distinguished from permanent severance.")

¹⁵ Assistant Superintendent for Administration Kenneth Otero testified: "[Y]ou only can suspend a child for up to 10 days. So we couldn't say you're suspended indefinately. So we would say she was expelled, you know, excluded from school until we could have another hearing. Would I say she's permanently expelled? No." (Otero Dep. at 20.)

¹⁶ In addition, the School Board used inconsistent language to describe Anderson's status. In letters, the School Board said she was expelled pending a hearing. In memos hand-delivered to Anderson's house, the School Board wrote that Anderson's "suspension is extended to include those days before the hearing on Thursday, June 2, 2005." (Doc. 31-2 at 10.)

¹⁷ The principal of the alternative school in St. Lucie County told Mrs. Walton that there was supposed to be a final expulsion hearing. In her deposition, the School Board's counsel asked Mrs. Walton: "Did you believe him?" She answered: "Yes. . . . I [did] believe him." (Paulette Watson Dep. at 54-55.)

11

parents would not have moved across the state and sold their house at a loss if they had not believed that Anderson was expelled from Riverview High. While a genuine factual dispute remains about what the Waltons *believed*, no genuine issue of material fact remains about what the School Board did. The School Board did not officially and permanently expel Anderson without notice and a hearing.

The School Board was prepared to conduct an evidentiary hearing into the allegation that Anderson hit Assistant Principal Massena. The School Board would have provided Anderson with records; it would have called witnesses; it would have permitted her to argue her case to the School Board. In short, if Anderson had called the District to schedule a hearing, the School Board would have given Anderson the panoply of procedural protections that she now demands. Thus, the School Board did not deprive Anderson of due process. By failing to schedule the hearing, her parents did.

**B. The School Board Did Not Violate Due Process by Suspending Anderson**

The Court next examines whether the School Board deprive Anderson of a property interest without due process of law when it suspended her after the incident on May 13, pending a hearing.

The United States Supreme Court held in Goss v. Lopez, 419 U.S. 565 (1975), that due process applies to suspensions of 10 days or less, as well as to expulsions. Ordinarily, the Court held, a school should give a suspended student oral or written notice of the charge, an explanation of the evidence against the student if the student denies the charge, and an opportunity to present her version of events. Goss, 419 U.S. at 581. However, "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of

disrupting the academic process may be immediately removed from school." Id. at 582.

Here, school officials had reason to believe that Anderson, by allegedly striking an assistant principal, posed a danger to faculty and students. They could also conclude that her screaming, belligerence, and physical aggression threatened the educational process. The principal described her behavior as "out of control," and two Hillsborough County sheriff's deputies found it necessary to arrest her after seeing her behavior. Thus, under Goss, the school could constitutionally suspend Anderson before conducting a hearing.

Due process ordinarily requires notice and a hearing before a suspension to ensure that the school does not suspend a student in error. "The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences." Goss, 419 U.S. at 579. In this case, Anderson faced little risk that the school would suspend her by mistake. Anderson was suspended for pushing an assistant principal. In addition to the assistant principal, an employee in the student affairs office saw what Anderson did.[18] The assistant principal did not need to interview witnesses or weigh competing stories to determine what Anderson had done.

Even if Anderson had faced a real risk of error, the constitutional requirements of due process before suspension are "extremely limited." C.B. v. Driscoll, 82 F.3d 383, 386 (11th Cir. 1996). "[O]nce school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands." Id. After Anderson's suspension and arrest, the District promptly

---

[18] Employee Karri Ross wrote in a statement that Anderson, while screaming, shoved her way through Massena and walked out of the office. (Doc. 34-2 at 7.)

13

informed Anderson's parents of the actions. On May 13, the same day as the incident, the school also wrote a letter to Anderson's parents that informed them of the disciplinary charges against her and her 10-day suspension. Anderson's mother, of course, already knew what had happened—she had arrived on campus after the incident, and spoke to the principal and two assistant principals on the scene. The next week, Anderson's mother also met with the principal twice about the incident. On May 25, the School Board also informed the Waltons of the June 2 administrative hearing, where Anderson could admit or deny the disciplinary charges.

Although Anderson's removal lasted more than 10 days, the delay between removal and hearing did not deprive Anderson of her right to an education because school was not in session. Because the incident at Riverview High School occurred during the last week of school, Anderson was suspended during the summer. Thus, she missed no school and lost no right to attend school. Moreover, Anderson did not seek to attend summer school—so she was not deprived of the right to attend summer school.

### C. Anderson Was Not Entitled to School Records under the Fourteenth Amendment

Anderson also argues that she was denied procedural due process at the June 2 administrative hearing because the hearing officers refused to provide her with copies of school records they were using. (Compl. ¶ 38.) The District acknowledges that it refused to provide the records because of the School Board's policy to withhold records until after the administrative hearing.

The June 2 hearing had a limited purpose—to determine if Anderson would admit or deny the accusation. Thus, Anderson's immediate need for the records was limited as well. Since the June 2 hearing was not an evidentiary hearing, where Anderson would be confronted

14

with evidence and witnesses, she did not need the records to confront her accusers. Nor does it seem likely that she could have used the records to decide whether to admit or deny the accusation. Even without the witness statements, Anderson knew that Massena and another school employee had seen her push Massena. But even if the June 2 hearing had been a full-blown evidentiary hearing, the federal Constitution would not guarantee her the right to the records. Nash v. Auburn Univ., 812 F.2d 655 662-63 (11th Cir. 1987) ("[W]e did not require in Dixon that students facing a hearing on charges of misconduct be given the names of witnesses against them and a summary of their expected testimony, when the opposing witnesses will testify in the presence of the accused.") See also Boykins v. Fairfield Bd. of Ed., 492 F.2d 697, 701-02 (5th Cir. 1974).

## CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that the School Board's motion for summary judgment (Doc. 37) is **GRANTED** and Anderson's cross motion for summary judgment (Doc. 38) is **DENIED**.

The Clerk is directed to enter a judgment in favor of Defendant Hillsborough County School Board, cancel all scheduled hearings, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Tampa, Florida this 30th day of October, 2009.

*[signature]*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

15